Calling cases 143872 and 143931 Warren Drilling Company, Inc. v. Ace American Insurance Company, et al. Oral argument not to exceed 15 minutes per side. John Kevin West for the appellant. May it please the Court, Mr. Corcoran. My name is John Kevin West and I represent Equitable Production Company, now known as EQT Production Company. This is an appeal from the summary judgment entered by the United States District Court for the Southern District of Ohio with regard to the interpretation of the indemnity provisions of a drilling contract. We would request that the Court reverse the judgment entered by the District Court and direct it to enter a judgment holding that Warren isn't required to indemnify EQT. We would request three minutes for rebuttal. In essence, this case all turns upon the drilling contract in question. EQT is a natural gas producer. It's headquartered in Pennsylvania, but it has operations in West Virginia, Pennsylvania, Kentucky, and Ohio. Is this your contract? It is, Your Honor. And that's a very important point, I think, in this case. The way EQT, like most natural gas producers, is that they're a natural gas producer. In instances where they're going to drill a new well, the services, as far as that are being provided for drilling and completing the new well, are provided by contractors. Contracts are devised in those particular situations that ensure that whenever these folks are performing either drilling or completion on a well site, that they're going to be responsible for whatever they do. And certainly EQT drafted this drilling contract in such a way to make Warren responsible if there were any claims arising from the drilling and completion. But it doesn't. It very carefully sets things out. They're responsible for problems stemming from the surface, and you're responsible for below-surface problems. That's true, Your Honor. If you look just at paragraphs 11.5 and 11.6 in a vacuum, which is what the district court did, in their initial opinion, those are the only two provisions that they discussed. In their consideration opinion, they did mention in one sentence 11.3. What they didn't do is they didn't mention what we think is the very core of the indemnification portion of the contract, and that is section 11.1, which requires Warren to procure insurance that would cover any claims irrelevant. That's a general provision followed by specific provisions. Doesn't the specific usually trump the general? I think that is correct, Your Honor. But I think that 11.1 provides for a very specific obligation on the part of insurance, and the parties contemplated, certainly, that if there were any claims, that that insurance would be primarily responsible as far as determining how anyone making a claim would be compensated. Secondly, Your Honor, with regard to your observation regarding the specific versus the general, if you look at section 11.8 of the drilling contract, it very specifically says in instances where there is a claim related to water damage, that portion of the contract initially was put in there and said if there's a water damage claim, that's going to fall on EQD. Let's stick with the first argument, 11.1F. If we read it as broadly as you read it, what independent work does 11.6 still do? Do you say that it just swallows up 11.6, or does 11.6 still have work to do? I think, Your Honor, that 11.1 is a catch-all provision that addresses an independent obligation on behalf of Warren to procure insurance which would cover any claims. Now, there might be instances, for instance, if they procure insurance from a company who becomes insolvent and they can't satisfy claims, then, yes, you have to look further into the agreement and in those particular situations, how is indemnity going to be apportioned between the parties? But I think that 11.1, if you look at it, it establishes an obligation for them to procure insurance that's going to cover any claims. And the record reflects that they went out and that's what they intended to do. They talked to their agent. Their agent said, yeah, I was going to get a policy that would satisfy any kind of claims, including the type of claim that was made in the West Virginia District Court action, that even after a claim was made against the policy, the agent said, you know, I thought it covered it. So does 11.6 apply to insurance at all? I don't think it does, Your Honor. I think that that applies. I think that you have to review 11.5 and 11.6 together and construe them together. And if you had a contract that did not include 11.1, nor did it include 11.8 or 11.3, then I think that the District Court got it right. If you look at it in a vacuum, and that's what the District Court did, they just looked at 11.5 and 11.6. They said, if you look at 11.5, this is not something because that it occurred above the surface and there was, you know. These are two completely independent concepts. One is indemnity and one is insurance. And you can lose on indemnity and still say, okay, I lose on indemnity, but you had an independent obligation to carry this insurance. And therefore, I have a claim against you. But these are two different things. But if, Your Honor, if you look at 11.1F, in the event that Warren procured insurance or didn't procure insurance, the insurance didn't cover it. In that instance, 11.1F makes Warren, the contractor, solely liable for any claims. Okay, so let's look at the insurance. It says what they have to cover. I mean, it says what they have to procure. General liability, including premises and operations, and it goes, it tells you what they have to cover. I assume you're under 11.1C? That's correct, Your Honor. Okay. And as you'll see, there's the sudden and accidental pollution. And there are a number of provisions in here. Okay, but they did have sudden and accidental pollution cover, right? They did, and they thought that they were getting, you know, they recognized their obligation to Okay, just stay with me, okay? I'm sorry, I apologize. Okay, it says what they have to cover, what they have to have, the type of coverages that they have to have, right? That's correct. Okay. Did they have these coverages? They thought they did. I'm not asking that. Did they have these coverages? The insurance company said that they did not. There was a dispute about that. They sued the insurance company as well as EQT on the indemnification claim and settled that claim. Settled the claim? With the insurance company. Okay. Let me ask you again. Did they have these coverages? That issue was never decided whether or not they did. Okay, but it seems to me that if you are trying to maintain an action under this section, then that's what you do. You say to the court, they were obligated to have these coverages. They didn't have them for whatever reason. Because they didn't have them, we have suffered a loss, and therefore, we want to recover under this provision. And that was pled in the complaint, Your Honor, that they did not acquire sufficient insurance that would have covered the claim. So then you fall down to 11.1F that says if they did not, then they're solely liable. But then it's a different case. I mean, there's no question you have the indemnity provisions and you have the insurance provisions. And you're liable under the indemnity provisions. I don't see how you can get around that, except maybe this argument about how you crossed out water. And it's a different argument that says, okay, maybe we're liable, but you were supposed to get insurance to cover that liability. And then you have a trial over whether, as a standard in the industry, whether general liability covers this separate apart from sudden and accidental pollution. But that's a different case. I mean, did you argue to the court that, okay, these indemnity provisions may say this, but they had a separate obligation to insure us against this liability? Yes, we argued that under 11.1 that they had a separate obligation to do that. That's part of the complaint. Okay. And what evidence did you present to show that the insurances set forth under E were not procured? We presided testimony from the agents that said that they thought they were procuring it. And then the fact that they were not procured, that evidence is in the record by ACE's denial of coverage, which they were originally a party and pled as part of their pleadings in this case that they didn't have to cover this event. Okay. And did you argue to the trial court that, see, I think these are two different arguments. It's one thing to say the indemnity provisions don't apply because we have an insurance provision. And I think the answers that you're hearing from the judges, all of them who have been involved, is to say, well, that doesn't make sense because you have indemnity provisions. Why would you have indemnity provisions if they didn't mean anything? So the answer I would think that you then present is that, no, these are two different things. We're not denying liability under indemnity. We are saying that they had an obligation to insure us against that liability. And then you engage with the insurance section. But did you argue that to the court? We did, in part. I mean, we argued that, and then we argued under the terms of the agreement. And perhaps it was not very artfully done because what we did is we said that if they didn't provide the insurance under 11.1, that was a breach. And then when you look at 11.1F and it says if they don't have the insurance, then they become solely liable, I guess that could be interpreted as solely a breach of contract. Did the court address whether their insurance that they procured satisfied their contractual obligation under 11.1C? No. Did you ask the court to address that? We didn't specifically ask that because at that time the pleadings reflected that the Ace Insurance Company had denied coverage in an event saying that no, that there is no coverage. So then wouldn't you have said they were obligated under 11.1C to obtain the coverage that it has now been determined that they did not obtain? We did say that, and we pled that, Your Honor. Okay. Thank you. I'm sorry to have used that. No problem. May I please the court? My name is Dan Corcoran. I represent Warren Drilling. Can you speak up? Sorry, yes. I'll talk about 11.1F first because that's what you were asking about. They did raise this issue in their pleadings below, but I don't believe that it was raised on appeal. They didn't make the argument on appeal that we acquired the improper coverage, and it wasn't argued on appeal. In addition to that, we did obtain the improper coverage. EQT knew about the insurance that we acquired beforehand. We think that they approved the coverage that we acquired beforehand. And the declination letter from ACE is, I think, attached to one of the pleadings. If you look at it, they say the reason why we didn't get coverage, and it wasn't because we didn't get the right coverage. It was because there was a requirement that we had to notify them within 30 days of the discharge. And EQT received complaints about the water quality from the landowners, and they didn't tell us about it until after the 30 days were over. So that's why the insurance company denied coverage. So they keep trying to say the argument, well, the fact that the insurance company didn't provide coverage means you didn't get the right insurance. Well, that's not true. We got the correct coverage. The contract doesn't require us to get coverage that covers any and all claims that might ever be asserted. It specifies the coverage that we were required to obtain, and we did. So we did not breach 11.1F. And as you pointed out, Judge Sutton, it is a general provision that is override. It deals with just any loss or damage provision that deals with pollution or contamination. Is 11.6 an insurance provision or just an indemnification provision? Well, it's a number of things. There's four obligations. They are required to defend, indemnify, hold us harmless, and assume full responsibility for the claims that are described in that paragraph. I'm not sure whether that constitutes insurance or not. I mean, certainly the duty to defend is a component of insurance. The duty to indemnify is a component of insurance. And this kind of leads into the cross appeal. We had asked for recovery of attorney's fees in connection with this case, and the district court initially granted that and then reversed himself on the motion for reconsideration. We think the district court got it right the first time. Their argument is about the American rule, and we understand the American rule, but even they admit that the parties can agree by contract. Do you think Pennsylvania follows the American rule? Yes. Okay. But you're saying there's an exception because of the terms of the contract here. Right. Isn't Pennsylvania law unclear, so we have to decide which of the two variations of the law that other states have adopted we should follow? Well, we have presented some Pennsylvania law on this point. You know, it's kind of hard to find a case where the language is exactly the same as it is in this one. What's your best case? Okay. There's a couple different cases. The Mall v. Philadelphia case. Say the name again. Mall, M-A-U-L-L-E. Attorney's fees were awarded in that case. Now, I should point out it is true that the clause did say in there attorney's fees, unlike our clause didn't use those exact words, but the court didn't focus on that fact, whether those magic words were in the clause when it came to its decision. What are the good words in yours? Is it hold harmless? Hold harmless is one, yes, certainly. But I think maybe just as important or even more important than that is the duty to defend. The duty to defend includes the cost of hiring counsel. I mean, if you think about what the duty to defend is, another way of saying it would be if I get sued. And they're liable for that. You're going to pay my attorney's fees. But they're not contesting that, that they owe attorney fees for the underlying case. Right. But, as I said, there's four components. And the district court gave us the settlement amount because they had a duty to indemnify us. They gave us our attorney's fees, expert witness fees and all that because they had a duty to defend us. But that's it. The indemnification clause has more to it than that. There is the hold harmless. There is the obligation for them to assume full responsibility. But indemnity clauses are sometimes unclear. They're obviously contracts. And the norm is when you have a deck judgment action or some kind of action about what a contract means, each side pays its fees. I mean, I know you can contract out of that. But it just seems to me, yes, all this is very broad language in 11.6. But it's all broad language that goes up to for pollution or contamination. And that relates to the underlying suit. That doesn't relate to holding harmless with respect to the indemnification clause. Right, which leads me to the second case that I wanted to mention. Well, there's a number of cases, but principally CalMo Enterprises versus Commercial Union Insurance. Now, granted, this was a case involving an insurance contract. But what the court held in that case is if the insurer has a duty to defend and doesn't do that and basically guessed wrong, you know, you thought you didn't have a duty, but you did, then the insurer is going to be held responsible for that. And what we're trying to argue is that the duty to defend is not that different under an insurance contract than it is in this case. And the duty to defend does include the cost of hiring counsel. I just want to make sure at the beginning there are two different things going on. The first is does Pennsylvania apply the American rule and have they applied it in the indemnity setting? And that's kind of a bigger picture issue. And then there's the issue of, okay, what about the language of this contract and what kind of cases are there that talk about similar language? But on the first question, does Pennsylvania follow the American rule and have they done it in the indemnity setting? I guess I feel like this Pennsylvania Supreme Court case, Boiler and Engineering and Supply Company, 1971, seems to suggest with the first question, not the second, but the first question, that we start with the assumption that Pennsylvania courts are going to apply the American rule even in an indemnity setting unless when you look at the contract they've clarified that fees apply. And I agree with you. Those are magic words of attorney's fees. But am I getting it right in terms of the orientation? And you're looking at the Boiler case? Yes. I don't think that that case can be read to create such a broad rule. There were, I think, some important differences between that case and this case. The plaintiff in the Boiler case was not the real party in interest. The plaintiff actually had already received payment and reimbursement for his damages from his insurance company. So this was really an action for the insurance company attempting to recover what it had already paid out. And there was no contractual relationship between the insurance company and the defendant. The insurance company in that case was required to pay the benefits, whereas Warren Drilling is not contractually required in this case. So the fact that they weren't dealing with the real party in interest in that case is significant, and we pointed that out in our briefs. The predecessor case to Boiler Engineering, the one that Boiler Engineering reversed, there was even a case that said, you know, we're not going to follow that rule when somebody has paid for their own attorney's fees out of their own pocket. So I don't think that it can be read that broadly, and I also think it's significant that the Supreme Court of Pennsylvania has never cited to that case ever since it was first issued in 1971. So it's been a long time. Are you familiar with a case called Winston Network versus Indiana Harbor Belt Railroad, which is a Seventh Circuit case, 1991, applying Pennsylvania law? Was that cited in the briefs? Not in the first two. It was one that I found. That's why I asked if you were familiar with it. Was it Winston? Winston Network, and it's a Seventh Circuit case. It appeared to me to support your position, the Seventh Circuit decision from 1991. Wish I'd found it. I'm sorry that I'm not familiar. No problem at all. I mean, it seems to me that the Mall case and the Winston case support your position, but they're both federal cases, right? One is a district court case, and the other one is a Seventh Circuit case. But they both, I mean, well, the language in Winston is broad, I think. Are you, and this picks up on Judge Seidner, are you arguing for a rule in indemnity cases generally, which seems to be the Alaska and Delaware rule, or are you arguing that this particular contract of indemnity covers it, or both? I think it has more to do with this particular contract. I mean, we cited those other cases because they talked about the word harmless and what they mean, and we think that that does have relevance here. But our clause is, I think, even more clear that attorney's fees should be included because not only does it say hold harmless, it also says that they're supposed to assume full responsibility. And we just disagree with the idea that it's just a search for magic words, whether it uses that exact phrase or not. Under Pennsylvania law, the construction of contracts is supposed to be made in light of the situation of the parties and the circumstances connected with the transaction. And the words are supposed to be given their plain, ordinary meaning, and you're supposed to give meaning to every word. Based on the way that the district court has interpreted the clause, it just seems like he gave meaning to indemnify, he gave meaning to defend, but he didn't, the fact that it also said hold harmless and assume full responsibility, well, that didn't seem to make any difference, and I'm not sure that he gave any meaning at all to those words. But all of that relates to the claims against them, right? Not the claim. I'm not sure that that's the case. I mean, again, just giving the words their plain meaning, hold harmless, I think should mean that at the end of the day, you know, I shouldn't be harmed by this. But what indemnity contract does not have the phrase hold harmless? This rule would obliterate all of these other cases because that's classic wording that appears in all indemnity cases. I don't think it would obliterate all cases because for two reasons. One, it's not just the hold harmless. Yes, we're talking about that, but it's also assume full responsibility, those two in conjunction, but also the fact that this contract included a duty to defend. Not all indemnity clauses include the duty to defend. That's pretty normal because it's not very useful if you have to defend, take this case. It's very costly to defend that water pollution, water contamination case. It's incredibly normal that that is what it covers. I mean, I'm pretty confident that's right. Well, I don't, I mean, there were cases that we cited to in the brief and that they cited to in the brief that were distinguishable because they did not have the duty to defend in there. The one that I think they raised for the first time in their reply brief, it was best products, I believe. They tried to say, well, look, it says hold harmless and they didn't get your fee, so therefore your whole argument about hold harmless doesn't hold any water. I disagree there because that clause, unlike our clause, did not have the duty to defend. So I think you're concerned about, you know, if fees are awarded in this case, that it would create a huge exception to the American rule, and I don't think that's the case. Because of the specific language. But your principle is if the language has hold harmless and there's a duty to defend, then it does, you do get fees, whether that jurisdiction has the American rule or not. That's your, I think I'm pretty fairly characterizing your position. If it has, if it says hold harmless and assume full responsibility and if it has a duty to defend. I think, I mean, I don't know that it's fair to say that every single clause is drafted in the way that ours is. So, and then the other point that you made at the beginning, Judge White, is that this drilling contract is, was drafted by EQT and there is a principle under Pennsylvania law that if there's any ambiguity in the contract that it should be construed against them. And also the idea that, you know, this is a breach of contract case, and we're supposed to give effect to the intentions of the parties and the words that they chose, and if there's a breach, to award the non-breaching party his expectation damages, and to be put in as good a position as you would have been if the contract had been performed. Well, I mean, as of when Mr. Bays gave his testimony, we were $88,000 in the hole on this case, and it's more than that now because of the appeal. So if we win and if the court affirms the district court's decision on summary judgment but does not award fees, we're not going to be in as good a position as we would have been if the contract had been performed. But no litigant ever is because of the American rule. That's true, but we have an agreement here that contemplates the payment of attorney's fees that is, I think, somewhat unique. And so, therefore, that was the intent of the party. That's the ultimate overriding principle in interpreting any contract is to give effect to the intent of the parties. Thank you. Thank you. May it please the court, two issues I would like to touch on. Number one, there was discussion in the district court opinion, and there's been discussion today about the application of the specific over the general. And with regard to that particular issue, I think that it's important to look at paragraph 11.8 of the drilling contract because in there, as we've noted in our briefs and has been discussed today, there was a section in there that talked about, in the form contract, that EQT would be liable for any issues with regard to damage to water. That one's modified by property rights, right, property right in. You know, it still leaves room for pollution and contamination cases involving water. But I think if you look at the pleadings, which were part of the record in the West Virginia District Court case, I mean, it is, in essence, it's a claim saying you've damaged our water, which is what, 11.8? 11.8. But weren't they also seeking recovery for health problems caused by drinking contaminated water? Well, that was a, you know. That's not property right in water. That's related to pollution or contamination. And that's a personal injury claim. Right. I agree. That, if you look at 11.3, is addressed by that. But that one says, except as otherwise provided. It does. And I think if you look at 11.8, the way that that was dealt with, with crossing the water out, I think that expressly provided in an instance where there is a claim for water damage, that any obligation under the form contract that would go to EQT would be altered. And I guess our primary argument is that the court should completely reverse the summary judgment, direct the district court to award us summary judgment. But I think an alternative would be, based upon this 11.8 language, that there might be an instance that it would be appropriate to reverse the summary judgment holding that there was indemnity that was owed by EQT to Warren, and you might not reach the issue of whether or not they had to indemnify us or not. That's not our primary argument. But did you argue to the court that, look, I mean, there's an ambiguity here. There's a uses in the industry. There was an understanding. Let's take parole testimony. We didn't argue that, and I'm not arguing that. Oh, okay. I'm not arguing there's an ambiguity. I think that we're arguing that if you look at 11.8, that you reach that result as a matter of interpretation. I have to tell you, when I was first going through this case, I was thinking to myself that it is remarkable that you could be using this contract if you want it to say what you are arguing. I mean, all the money in the world and whoever drafted this, it's a mess. And one would hope that you're no longer using it, and you get something that says what you want it to say. That's a good point, Your Honor. It is a form of agreement, and that was part of the reason we asked this court for our argument in this case because this agreement is an agreement that's being used widely throughout the industry, so it's an important decision. Thank you. Thank you both for the argument. The case will be submitted with the clerk adjourned.